Troy Foster (#017229)
**The Foster Law Group**
518 East Willetta Street
Phoenix, Arizona 85004
Telephone: (602) 461-7990
tfoster@thefosterlaw.com

Kenneth Frakes
**Bergin Frakes Oberholtzer Smalley, PLLC**
4343 E. Camelback Road #210
Phoenix, AZ 85018
kfrakes@bfsolaw.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Pizer and Daniel Noble, on behalf of themselves and others similarly-situated<br><br>Plaintiffs,<br><br>v.<br><br>Rush Auto Recyclers, Inc.; Janet Rush and Dan Rush, individuals; and John Radonovich, an individual,<br><br>Defendants. | Case No.:  2:19-cv-05019-DLR<br><br>**AMENDED COMPLAINT** |

    For their Complaint against Defendants, Rush Auto Recyclers, Inc. ("Corporate Defendant" or "the Company"), Janet Rush ("Ms. Rush"), Dan Rush ("Mr. Rush"), and John Radonovich ("Mr. Radonovich") (collectively "Defendants"), Plaintiffs Brian Pizer and Daniel Noble ("Plaintiffs" or "Class Representatives"), referred to jointly as "the parties," allege as follows:

**Background Allegations and Jurisdiction**

1. At all times relevant to this Complaint, Mr. Brian Pizer resided in Maricopa County, Arizona, and is a citizen of the State of Arizona.

2. At all times relevant to this Complaint, Mr. Daniel Noble resided in Maricopa County, Arizona, and is a citizen of the State of Arizona.

3. At all times relevant to this Complaint, the Company was an Arizona Corporation authorized to conduct, and conducting business, in Maricopa County, Arizona.

4. Upon information and belief, Defendants Mr. and Ms. Rush owned the Company.

5. At all relevant times to this Complaint, Ms. Rush was the President of the Company.

6. At all relevant times to this Complaint, Mr. Radonovich was the Chief Financial Officer of the Company.

7. Defendants Mr. and Ms. Rush and Mr. Radonovich exercised managerial responsibility and substantial control over the terms and work conditions of the Company's employees.  Among other things, Defendants were authorized to hire and fire employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, maintain any employment records that may exist, and draft, implement, and enforce employee policies.

8. Plaintiff Brian Pizer is a current employee and has worked for the Company since 2009.

9. Plaintiff Daniel Noble was employed with the Company from February 2013 until he terminated in September 2018.

10. At all times relevant to this Complaint, Defendant has employed Plaintiffs as tow truck drivers.

11. The Corporate Defendant is an employer as defined in A.R.S. § 23-350(3).

12. The prospective Class Members that Plaintiffs represent are current and former tow truck drivers of the Company, employed for some time during July 2016 to present ("Violative Period").

13. At all times relevant to this Complaint, the Company has employed all prospective Class Members in the role of tow truck drivers during the Violative Period.

14. Defendant is an employer as defined in 29 U.S.C. § 203(d).

15. Plaintiffs and each prospective Class Member were Defendants' employees as defined in 29 U.S.C. § 203(3)(1) and Arizona law.

16. Plaintiffs and each prospective Class Member were engaged in commerce on behalf of Defendant, as defined in the Fair Labor Standards Act ("the Act"). *See* 29 U.S.C. § 203(b); *see also* 29 C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour provisions of the Act as employees 'engaged in commerce' are employees doing work involving or related to the movement of persons or things . . . among the several states or between any State and any place outside thereof.").

17. Defendant is not exempt from paying Plaintiffs and each prospective Class Member for work performed as required by the Act and Arizona law.

18. The acts and omissions forming the basis of this Complaint occurred in Arizona, primarily in Maricopa County.

19. Jurisdiction and venue are appropriate in this Court pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-352 et seq.

**General Factual Allegations**

20. Defendants provide services to customers throughout the State of Arizona.

21. As part of that service, Defendants employ tow truck drivers to transport customers' vehicles to various locations.

22. Upon information and belief, Defendants have employed more than 30 tow truck drivers during the Violative Period.

23. As tow truck drivers, Plaintiffs and each prospective Class Member, are/were non-exempt employees for Defendants.

24. Defendants' policies and representations acknowledge that Plaintiffs and each prospective Class Member are/were non-exempt employees.

25. Throughout all times relevant, Defendants misclassified its tow truck drivers as exempt/salaried employees.

26. Though tow truck drivers were required to track their hours on time sheets, Defendants did not pay the truck drivers based upon the time sheets.

27. Rather, all tow truck drivers are/were paid the same amount each pay period regardless of the number of hours worked.

## **Allegations Regarding Required Free Work**

28. Plaintiffs, and each prospective Class Member, is/was required to perform work for Defendants without compensation.

29. Plaintiff Brian Pizer worked approximately 3.5 to 5.5 hours each week for which he was not paid.

30. Plaintiff Daniel Noble worked approximately 8 to 12 hours each week for which he was not paid.

31. Upon information and belief, each prospective Class Member was/is working between 3 and 12 hours each week for which he/she is/was not being paid.

32. All of the work performed by Plaintiffs, and each prospective Class Member, was to benefit Defendants.

## **Allegations Regarding Failure to Pay Overtime**

33. Defendants created a payroll record that purports to pay Plaintiffs an hourly rate, an overtime rate, commissions, and a bonus ("payroll record").

34. Plaintiffs, and each prospective Class Member, were not informed of and do not know what the "commission" and "bonus" figures represent.

35. The payroll records do not represent the hours/time Plaintiffs worked.

- 4 -

36. The payroll records do not accurately pay Plaintiffs, and each prospective Class Member, the overtime that each worked.

37. The payroll records do not comport with Plaintiffs, and each prospective Class Member's, time sheets.

38. The payroll records reflect that each Plaintiff and prospective Class Member is paid the same amount regardless of the time worked.

39. Upon information and belief, the payroll records have been manipulated to create a salaried figure for the Plaintiffs and each prospective Class Member.

### Allegations Regarding Defendants' Willful Violation

40. Plaintiffs, and various Class Members, tracked the time worked on Defendants' behalf.

41. Defendants created a payroll record that disregards the hours worked.

42. Defendants created a payroll record that purports to pay an hourly and overtime rate.

43. Defendants actually pay/paid Plaintiffs, and each prospective Class Member, the same amount each pay period regardless of the hours worked.

44. Plaintiffs complained about Defendants' unlawful compensation.

45. Defendants' creation of the payroll record, as well as other overt actions, represent willful violations.

### Collective Action and Class Allegations

46. Plaintiffs bring this Class Action/Collective Action on their own behalves, and pursuant to Arizona Rules of Civil Procedure, Rules 23(a), (b)(2) and (b)(3) and Section 216(b) of the Act, on behalf of the following prospective Class Members ("Class Members").

47. The Class is initially defined as: any current or former employee of Defendants engaged as a Tow Truck Driver from July 17, 2016 to date of filing.

48. *Numerosity – Ariz.. R. Civ. P. 23(a)(1).* The number of Class Members is so numerous that joinder of all individuals to a single complaint would be impractical. Though the exact number of Class Members is unknown and in complete control of Defendants, based upon the number of facilities across the county, the number of front-line employees in these roles at any one time, and the significant turnover, it is reasonable to believe that there are a minimum of 30 prospective Class Members. The Class Members are readily identifiable from Defendants' employment and payroll records.

49. *Commonality and Predominance – Ariz. R. Civ. P. 23(a)(2) and (b)(3).* There are questions of law and fact common to all Class Members. These common questions include, but are not limited to:

   a. Did Defendants fail to pay Class Members for hours worked?
   b. Did Defendants misclassify Class Members as exempt and fail to pay required overtime?

50. *Typicality – Ariz. R. Civ. P. 23(a)(3).* Plaintiffs' claims are typical of all other Class Members. Plaintiffs, like all other Class Members, were tow truck drivers that performed work for Defendants and were compensated/uncompensated in the same manner as other similarly-situated employees.

51. *Adequacy of Representation – Ariz. R. Civ. P. 23(a)(4).* Plaintiffs will fairly and adequately represent the Class Members. Plaintiffs were employees during the Violative Period; Plaintiffs have the same non-conflicting interests as the other Class Members. Plaintiffs have retained competent counsel that has experience in litigating Class Action and Collective Action matters, including certified Class Actions that involve employment and commercial litigation claims, including wage and hour matters. As such, the Class Members' claims will be fairly and adequately represented by Plaintiffs and their counsel.

52. *Superiority of Class Action – Ariz. R. Civ. P. 23(b)(3).* A class action is superior to other available methods for adjudicating the claims effectively and efficiently. The

adjudication through class will avoid potentially inconsistent and conflicting results of the asserted claim. There will be no difficulty in managing the Class, and a single adjudication of the claim will substantially benefit the Class Members and the Court. Damages for individual Class Members are likely inadequate to justify the cost of individual litigation. As such, absent class treatment, Defendants' willful violations of law inflicting significant damages in the aggregate would go unremedied.

53. Class certification is also appropriate under *Ariz. R. Civ. P. 23(a) and (b) (2)* because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or declaratory relief is appropriate to the Class as a whole.

54. For all of the reasons outlined above, this matter could also be conditionally certified as a Collective Action pursuant to Section 216(b) of the Act.

## **Claim:  Violation of FLSA and State Laws (Minimum Wage/Overtime)**
## **(Against All Defendants)**

55. Plaintiffs re-allege and incorporate by reference paragraphs 1-54 as if fully set forth herein.

56. Defendants failed to pay Plaintiffs, and prospective Class Members, for work performed during the Violative Period in violation of the Act.

57. Defendants misclassified Plaintiffs, and prospective Class Members, as exempt employees and failed to pay required overtime in violation of state and federal laws.

58. Defendants created inaccurate records to support the misclassification and payment methods.

59. Defendants' failures were willful.

60. As such, Defendants failed to pay Plaintiffs and prospective Class Members the federal minimum wage and overtime.

61. Defendants' actions also violated Arizona law wage laws.

62. Plaintiffs, and each prospective Class Member, are entitled to recover all unpaid wages, withheld overtime, liquidated damages in an amount equal to the unpaid wages and overtime, reasonable attorneys' fees, and costs of the action.
63. In addition, Plaintiffs, and each prospective Class Member, are entitled to recover treble damages for Defendants' failures.

## Relief Requested

**THEREFORE**, Plaintiffs, and each prospective Class Member, respectfully requests the following relief:

A. An award of unpaid wages in an amount appropriate to proof adduced at trial pursuant to 29 U.S.C. § 207 and 216(b).

B. An award of liquidated damages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b).

C. Statutory penalties for willful violations of 26 U.S.C. § 7434;

D. Punitive damages and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

E. Treble damages and attorneys' fees and costs pursuant to A.R.S. § 23-355;

F. Pre- and post-judgment interest on the amount of unpaid wages; and

G. An Injunction against Defendants prohibiting further, and continued violations, of the Act.

**DATED** this 3rd day of September, 2019.

| The Foster Group, PLLC | BERGIN FRAKES SMALLEY & OBERHOLTZER, PLLC |
|---|---|
| */s/ Troy P. Foster* | */s/ Ken Frakes* |
| Troy P. Foster<br>518 East Willetta Street<br>Phoenix, Arizona 85004<br>*Counsel for Plaintiffs* | Kenneth S. Frakes<br>4343 E. Camelback Road, #210<br>Phoenix, Arizona 85018<br>*Co-Counsel for Plaintiffs* |

CERTIFICATE OF SERICE I hereby certify that on the 3rd day of September, 2019. I provided the following counsel with the documents electronically:

Amy Gittler
Jackson Lewis
agittler@jacksonlewis.com
Attorneys for Corporate Defendant and Ms. Rush

Sam Coffman
Dickinson Wright PLLC
1850 N. Central Ave., Ste 1400
Phoenix, AZ  85004
Counsel for Defendant Mr. Rush

*/s/ Christina Garcia*